**Irwin GORDON & Felice S. Gordon, et al., Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**Samuel MILLER and Rose Miller, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

Nos. 84–1598, 84–1674.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 14, 1985.

Decided June 24, 1985.

Stuart D. Perlman, Chicago, Ill., for petitioners-appellants.

George L. Hastings, Jr., Dept. of Justice, Tax Div., Washington, D.C., for respondent-appellee.

Before BAUER, CUDAHY and FLAUM, Circuit Judges.

CUDAHY, Circuit Judge.

■ These appeals require us to determine whether the Tax Court was correct in sustaining the Commissioner's determinations of deficiencies in the taxpayers' federal income tax returns. The Tax Court held that the taxpayers were not entitled to any deduction for their flow-through share of the depreciation of a motion picture owned by a limited partnership in which the taxpayers had invested, because the partnership itself was not entitled to any depreciation on the film. *Perlman v. Commissioner*, 45 T.C.M. (C.C.H.) 1100 (1983). The issue before us is whether, under the so-called "income forecast method," the partnership, a cash method taxpayer, is entitled to calculate depreciation based on revenue generated by the film and received by the distributor, but where no payments have been made to it by the distributor. We hold that the Commissioner correctly disallowed any depreciation, and affirm the decisions of the Tax Court.

## I.

These appeals together contest thirty-two decisions of the United States Tax Court sustaining the Commissioner's determinations of deficiencies in the various taxpayers' 1975, 1976 and 1977 federal income tax returns.[1] The decisions, which were entered on January 19, 1984, all resulted from a memorandum opinion of the Tax Court issued on March 29, 1983, which decided on summary judgment the sole issue with respect to all the taxpayers. Notices of appeal were timely filed. This court has jurisdiction pursuant to section 7482 of the Internal Revenue Code of 1954, as amended (the "Code"), 26 U.S.C. § 7482.

The pertinent facts are not in dispute. The taxpayers are thirteen couples who invested in an Illinois limited partnership called the Mitchell Film Company (the "Partnership") which was designed to provide tax shelter through investment in a motion picture. Taxpayer Stuart D. Perlman was also the general partner of the Partnership. In May, 1975, the Partnership purchased all right, title and interest in a motion picture titled "Mitchell" (the "Film") from Essex Enterprises, Ltd. The Partnership claimed a cost basis of $1,162,-500 in the Film.[2]

Distribution rights for the Film in the United States and various other areas of

---

1. The taxpayers and the docket numbers of their Tax Court cases are as follows: Irwin and Felice S. Gordon (Nos. 20232–80, 1464–81, 24761–81), Edwin A. and Audrey Schneiderman (Nos. 20557–80, 1460–81, 24762–81), Charles L. and Lois K. Howard (Nos. 2954–81, 1452–81), Jerome S. and Shirley F. Gore (Nos. 1453–81, 24760–81, 2584–81), John D. and Ann M. Gray (No. 1455–81), Gilbert and Shirley Lanoff (Nos. 2595–81, 1456–81, 1554–82), Albert C. and Sally Brody (Nos. 2591–81, 1457–81, 30918–81), Owen R. and Shirlie Siegel (Nos. 1458–81, 2583–81, 25731–81), Stuart D. and Avis R. Perlman (Nos. 1459–81, 1556–82), John R. and Joyce M. Meinert (Nos. 2590–81, 1461–81, 1555–82), Jerome H. and Shirlee Stern (Nos. 1462–81, 2594–81), Nathan and Leah Averick (No. 1463–81), and Samuel and Rose Miller (Nos. 1454–81, 2665–81, 24763–81). The Millers have appealed to this Court from the decisions in the last three cited Tax Court docket numbers, *Miller v. Commissioner* (No. 84–1674), 766 F.2d 293 (7th Cir.1985). The joint appeal of all the other taxpayers from the other 29 decisions, *Gordon v. Commissioner*, 766 F.2d 293 (7th Cir.1985), is numbered as No. 84–1598 in this Court.

Because the appeals have been consolidated here under two docket numbers, two separate records have been transmitted to this court by the Tax Court. The record on appeal in No. 84–1598, *Gordon v. Commissioner*, contains the complete record as to 29 of the 32 decisions below; references to documents as numbered in that record will be "Doc." The record in appeal No. 84–1674, from the three *Miller* decisions, consists largely of the same documents included in the *Gordon* record or documents substantially identical to documents in the *Gordon* record.

2. We note that the memorandum decision was revised by an order of the Tax Court on April 28, 1983. The order deleted the sentence "The Partnership acquired this property by making a cash payment of $1,162,500," reported in 45 T.C.M. (C.C.H.) at 1100, and substituted instead "The Partnership claimed a $1,162,500 cost basis in the motion picture. For purposes of this motion for partial summary judgment only, the Court will accept the $1,162,500 claimed by the Partnership as the cost basis of this property." Doc. 153.

the world were held by Allied Artists Picture Corporation ("Allied"). Allied distributed the Film, which was exhibited in several thousand theatres throughout the United States and shown on network television. These showings produced revenues for Allied of $701,371, $354,748 and $376,393 during 1975, 1976 and 1977, respectively. Allied never paid any portion of these revenues to the Partnership. In 1979, Allied filed for reorganization under chapter 11 of the Bankruptcy Code.

The Partnership employed the cash method of accounting during the years in issue. On its 1975, 1976 and 1977 returns, the Partnership, having received no portion of the revenues for the Film from Allied, reported no income with respect to the Film. The Partnership did, however, claim deductions for depreciation of the Film in the amounts of $543,469, $275,022, and $122,789, respectively. The depreciation deductions resulted in tax losses for the Partnership for each year. Then, in turn, each of the taxpayers involved here, as partners in the Partnership, deducted an allocable share of the losses.

The Commissioner disallowed the Partnership's deductions for depreciation of the Film for each year and, accordingly, also denied the resulting loss deductions claimed by the taxpayers. The taxpayers then filed with the Tax Court thirty-two petitions seeking redetermination of the deficiencies in their taxes for one, two or three of the years. The litigation in the Tax Court moved ahead rapidly in three of the cases. The Commissioner filed motions for summary judgment as to the depreciation issue in those cases. The taxpayers in all 32 cases and the government filed a stipulation that the depreciation issue affecting each of the cases would be disposed of according to the ruling on the summary judgment motions in the three expedited cases.

On March 29, 1983, the Tax Court issued a memorandum opinion on the summary judgment motions, resolving the depreciation issue in favor of the Commissioner. *Perlman v. Commissioner*, 45 T.C.M. (C.C.H.) 1100 (1983). The court noted that the proper allowance for depreciation of motion pictures may be computed under the "income forecast method," the method that the Partnership elected. Under this method, depreciation deductible under section 167 of the Code is calculated by multiplying the property's basis for depreciation by a fraction. The numerator of the fraction is the income derived from the property during the taxable year, and the denominator is the estimated total income to be derived for the property.[3] In making its depreciation calculations with respect to the film involved here, the Partnership used as the numerator of this fraction for each year the revenue reported for the year by Allied; as the denominator, it used an estimate of total income of $1,500,000.

The Tax Court, however, ruled that the use of the revenues received by Allied as the numerator was incorrect. The court determined that under well-established precedent the income figure to be used by the Partnership in computing its allowable depreciation was *its* income, and since the Partnership received no income, the allowable depreciation would also be zero. Accordingly, the Tax Court concluded, the Commissioner correctly denied the Partnership's depreciation deductions, as well as the resulting loss deductions of the taxpayers.

Other issues in the 32 cases were settled, and pursuant to the stipulation, deficiencies in all the cases were determined in accordance with the memorandum opinion granting summary judgment. Decisions in all cases were entered by the Tax Court on January 19, 1984, and the taxpayers appeal.

## II.

Section 167(a) of the Code provides that a taxpayer shall be allowed as a depreciation deduction a reasonable allowance for the

---

3. *See generally* R. KOPPLE & B. STIGLITZ, TAXATION OF THE MOTION PICTURE INDUSTRY 18–21, 113–14 (1978) (discussing mechanics and tax consequences of income forecast method).

exhaustion, wear and tear of property used in the trade or business or held for the production of income. For purposes of this deduction, section 167(b) defines "reasonable allowance" to include an allowance calculated under certain named methods or under "any other consistent method" which satisfies certain criteria. On the theory that television films typically generate an uneven flow of income, the Service recognized that the methods of depreciation named in section 167(b) are in most cases inadequate when applied to such films. Rev.Rul. 60–358, 1960–2 C.B. 68. Because the usefulness of a television film in a taxpayer's trade or business is said to be more accurately measured over the stream of income it produces than over the passage of time, the Service accepted the use of the so-called "income forecast method" of calculating depreciation. *Id.* In relevant part, the revenue ruling states as follows:

[T]he Service has concluded that the so-called "income forecast" method is readily adaptable in computing depreciation of the cost of television films without producing any serious distortion of income. This method requires the application of a fraction, the numerator of which is the income from the films for the taxable year, and the denominator of which is the forecasted or estimated total income to be derived from the films during their useful life, including estimated income from foreign exhibition or other exploitation of such films. The term "income" for purposes of computing this fraction means income from the films less the expense of distributing the films, not including depreciation. This fraction is multiplied by the cost of films which produced income during the taxable year, after appropriate adjustment for estimated salvage value. * * * *

If in subsequent years it is found that the income forecast was substantially overestimated or underestimated by reason of circumstances occurring in such subsequent years, an adjustment of the income forecast for such subsequent years may be made. In such case, the formula for computing depreciation would be as follows: income for the taxable year divided by the revised estimated income (the current year's income and estimated future income), multiplied by the unrecovered depreciable film cost remaining as of the beginning of the taxable year.

The total forecast or estimated income to be derived for the films should be based on the conditions known to exist at the end of the period for which the return is made. This estimate can be revised upward or downward, as explained above, at the end of subsequent taxable periods based on additional information which became available after the last prior estimate.

Rev.Rul. 60–358, 1960–2 C.B. at 68–69. The Service has extended the use of the income forecast method to motion picture films, Rev.Rul. 64–273, 1964–2 C.B. 62, and the Tax Court has approved this application, *Schneider v. Commissioner*, 65 T.C. 18, 32–33 (1975). Although the taxpayers here are arguing, we think speciously, that the Commissioner is not allowing them to use the income forecast method, there is no dispute whether the income forecast method is proper or whether it was elected by the taxpayers. Instead, the dispute concerns how the numerator and denominator of the fraction used in the method are to be computed.

When a limited partnership or any other taxpayer elects to use the income forecast method to calculate its allowable depreciation deduction for a film, it does so by multiplying its basis by a fraction, the numerator of which is the income from the film less distribution expense and the denominator of which is the forecasted total income to be derived from the film during its useful life. The Commissioner contends that "income" includes only income for the film properly reportable by the taxpayer under its method of accounting for the taxable year. Since the Partnership is a cash basis taxpayer and received no income during the taxable years in question, the Commissioner contends that the numerator of the fraction is zero and, consequently, no deprecia-

tion is allowable. Taxpayers disagree, asserting that the use of net receipts to the taxpayer is inappropriate in calculations under the income forecast method. They argue that "income" as used in the numerator need only be of the same type as that used in the denominator. Therefore, they claim, the use of gross receipts to Allied as income in the numerator is proper because the Partnership also used gross receipts to Allied in its forecast of total income in the denominator of the fraction, and hence it is entitled to deduct significant amounts of depreciation.

The Tax Court has recently considered this contention in a number of opinions. *Greene v. Commissioner*, 81 T.C. 132 (1983); *Siegel v. Commissioner*, 78 T.C. 659 (1982); *see Fife v. Commissioner*, 82 T.C. 1 (1984); *Wildman v. Commissioner*, 78 T.C. 943 (1982). We agree with the position taken on this issue by the Tax Court in these cases, on two of which, *Siegel* and *Wildman*, the author of the memorandum opinion in this case relied.

The income forecast method was specified and approved in a revenue ruling in 1960. That ruling defined the numerator and denominator of the fraction as income from the film for the year and estimated total income, respectively. It also defined "income," in a sentence repeatedly omitted from the quotations in taxpayers' brief. *See, e.g.,* Taxpayers' Br. at 12–13. "The term 'income' for purposes of computing this fraction means income from the films less the expense of distributing the films, not including depreciation." Rev.Rul. 60–358, 1960–2 C.B. at 68. This definition makes two propositions clear. First, the figure in the numerator and the estimate in the denominator must be of the same character or type, although the former is for the taxable year and the latter is the estimated total. Taxpayers here claim that the same type of figure was used in each— gross revenue to Allied for the year in the numerator and estimated total gross revenue to Allied in the denominator. However, the sentence also makes it clear that only net income is to be used—"income from the films less the expense of distrib-

uting the films." Thus the method used by the Partnership to calculate depreciation is incorrect. "Under the revenue ruling, the numerator and denominator of the income forecast fraction clearly were to consist of actual net income and estimated total net income, respectively. [The Partnership's] professional advisers could not have misunderstood such requirement." *Greene*, 81 T.C. at 137.

■ Taxpayers contend that this change from gross to net would make no difference, since both the numerator and denominator would be affected. Under certain circumstances, such as if the taxpayer's share is a straight percentage of the gross receipts, this is presumably correct. But that does not solve the taxpayers' problem here for the Partnership received no income at all. Although the words of the quoted sentence do not spell this out, we believe that "income" can only be interpreted as meaning income *to the taxpayer.* This is consistent with the general rule embodied in section 451(a) of the Code and Treas.Reg. § 1.451–1(a) which require that items of income are to be included in the taxpayer's gross income in the taxable year in which actually or constructively received by the taxpayer. Any other interpretation would be so unusual that the Service would, we presume, have made such a rare meaning clear and explicit.

That "income" means income to the taxpayer is confirmed by Rev.Rul. 78–28, 1978–1 C.B. 61. That revenue ruling considered whether, under the income forecast method, a cash method taxpayer could include as income in the numerator of the fraction payments which it was entitled to but had not received, where such payments were not included in its gross income. The Service stated that "income reflected in the numerator of the fraction used to compute the depreciation deduction for the tax year must reflect the same gross income used to compute taxable income from the film for the same period." Rev.Rul. 78–28, 1978–1 C.B. at 61. Since the amounts in question here were not properly includable in the

taxpayer's gross income, not having been actually or constructively received, they were not includable in the numerator.

■ Although revenue rulings are not binding on the Tax Court, *Siegel,* 78 T.C. at 692–93; *Sander v. Commissioner,* 62 T.C. 469, 481–82 (1974), *aff'd,* 536 F.2d 874 (9th Cir.1976), (and *a fortiori* not on this court), that court has accepted these principles after considering contentions like those advanced against them here. *Greene,* 81 T.C. at 134–39; *Siegel,* 78 T.C. at 691–693. *See Fife,* 82 T.C. at 6–9; *Wildman,* 78 T.C. at 950–52. We agree with the Tax Court that

> in view of the concept underlying the allowance of depreciation of films, that is, the matching of income with the expenses incurred in the production of that income, the term "income," for the purposes of the computation of depreciation by the income-forecast method, can only be read to mean the amount of income properly reportable by the taxpayer as income under its method of accounting.

*Siegel,* 78 T.C. at 693. Therefore, since the Partnership, a cash method taxpayer, received no actual or constructive payments from Allied and thus neither could nor did report any income from the Film, the numerator of the fraction must be zero. The Partnership cannot include Allied's gross income from the Film in the numerator of the fraction.[4] Since the numerator must be zero, the depreciation must be zero, and so there is none to be passed through to the taxpayers.

■ Taxpayers make three unpersuasive arguments, which we will briefly consider, that this result is incorrect in their cases. First, taxpayers repeatedly argue that to deny them a depreciation deduction is contrary to the Code. They cite several Supreme Court cases for the propositions that depreciation must be taken as the asset is wasting or it is lost, *Massey Motors, Inc. v. United States,* 364 U.S. 92, 80 S.Ct. 1411, 4

L.Ed.2d 1592 (1960); *Virginian Hotel Corp. v. Helvering,* 319 U.S. 523, 63 S.Ct. 1260, 87 L.Ed. 1561 (1943), and that depreciation is an accounting device which does not depend on income in the entity taking the deduction, *Commissioner v. Idaho Power Co.,* 418 U.S. 1, 94 S.Ct. 2757, 41 L.Ed.2d 535 (1974). These general propositions are in most instances applicable. However, the income forecast method is a special method of depreciation which explicitly ties depreciation to income. By electing that method, taxpayers made those general principles irrelevant to their cases. They cannot now rely on decisions supporting those propositions.

Second, taxpayers argue that Revenue Ruling 78–28 is not applicable here. While it is true that the ruling was issued after the tax years here in question, the principles on which it stands are reasonable, and it was clearly foreseeable that these principles would establish the position taken by the Service. The ruling is not a "radical departure" from previous interpretations of the income forecast method. Nor is the ruling distinguishable from this case because the movie to which it was applied lost money while the Film here generated substantial revenues. Further, application of the ruling does not necessarily entail that the Partnership will never be able to take a deduction for depreciation. It must simply wait until (with luck) it receives income generated by the Film. Thus it is not necessarily unfair to deny the Partnership the depreciation, and it will not be "doubly penalized," once by Allied, which has not paid amounts due, and once by the Commissioner for not allowing the depreciation.

Finally, taxpayers argue that if the problem the Service is trying to get at is abuse of movie tax shelters, there is a better way. Taxpayers would have us allow the use of distributor gross receipts in the numerator and require inclusion of the value of any

---

4. This can be made intuitively clear by considering what the Partnership actually purchased. At the time the Film was "purchased," Allied already held the distribution rights. Presumably the Partnership could not, for example, withdraw the Film from distribution. Thus it is more accurate to say that what the Partnership actually purchased was a right to an income stream from someone else's distribution of the Film. This right is what is actually being depreciated. No income has been generated by it. Therefore the numerator must be zero.

non-recourse notes used to finance purchase of the film in the denominator. They say this would allow them a legitimate deduction without materially changing the results in various Tax Court cases in which depreciation calculated under the income forecast method has been disallowed. Taxpayers would present us with a set of figures derived by applying their preferred method to those cases. The cases cited are not on appeal before us, and the fact that there may be alternative methods of precluding tax shelter abuse does not require the Commissioner or this court to sanction a method of calculation that is not proper. We also note that the very revenue ruling which taxpayers attack, Rev.Rul. 78–28, requires that the denominator be at least as great as the amount of non-recourse notes secured by the picture since income from the film will be used to retire any such notes or, if the income is insufficient, the security interest in the film will be enforced. This appeal does not raise any question as to the appropriateness in light of this requirement of the denominator used by the Partnership.

For the reasons above stated, the Partnership is not entitled to any deduction for depreciation of the Film. The decisions of the Tax Court are AFFIRMED.