MARTIN AND DIANE STERENBUCH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sterenbuch v. Commissioner
Docket No. 19506-88
United States Tax Court
T.C. Memo 1991-505; 1991 Tax Ct. Memo LEXIS 554; 62 T.C.M. (CCH) 951; T.C.M. (RIA) 91505; October 3, 1991, Filed *554 Decision will be entered under Rule 155. Martin Sterenbuch, pro se. Thomas M. Cryan, for the respondent. WELLS, Judge. WELLS
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in petitioners' Federal income tax as follows: Year
Deficiency
1977
$ 11,068.68
1978
5,774.00
Respondent asserts in his amendment to answer that petitioners are liable for increased interest on the deficiency under section 6621(c). [1]
The instant case involves petitioner's [2] investment in a limited partnership interest in MLTD Limited Partnership (the Partnership). The issues for our decision are: (1) Whether petitioners are entitled to deductions for depreciation with respect to the Partnership's investment in a movie film under the "income forecast method"; (2) whether petitioners *555 may raise an issue that a deduction is allowable due to the abandonment of the movie film in 1978; (3) whether petitioners are entitled to an investment tax credit with respect to petitioner's share of the Partnership's investment in the movie film; and (4) whether petitioners are liable for increased interest under section 6621(c). FINDINGS OF FACT Some of the facts have been stipulated for trial pursuant to Rule 91. The stipulations are incorporated in this Opinion by reference irrespective of any restatement below. Petitioners resided in Bethesda, Maryland, on the date their petition was filed. The Partnership was formed in 1976. The purpose of the Partnership was to carry on the production, acquisition, distribution, and exploitation of motion pictures. The general partners of the Partnership were Robert M. Lutz and Robert E. Trattner. On March 12, 1976, the Partnership's general partners signed a purchase contract with TNT *556 Productions, Inc. (TNT), under which TNT was to produce, deliver, and sell a movie film tentatively titled "Most Likely to Die" (the movie film) to the Partnership. The movie film was completed in October 1976, and the Partnership acquired it for a cash down payment of $ 240,000 and a nonrecourse interest-bearing note due December 31, 1986, of $ 960,000. On December 23, 1976, the Partnership signed an agreement with Dimension Pictures (Dimension), which provided that Dimension would pay the Partnership a percentage of Dimension's profits from the movie film and $ 180,000 cash over the subsequent 2 years. [3] The Partnership reported the entire $ 180,000 as income from rents from the movie film's exploitation on its 1976 Federal income tax return. On December 31, 1976, petitioner became *557 a limited partner in the Partnership when he invested $ 30,000 in cash and executed a promissory note for $ 120,000 in favor of the Partnership due November 15, 1986. Petitioner held an 11.8-percent interest in the Partnership. The movie film, subsequently titled "The Redeemer," was completed in 1976. However, early in 1977, Dimension requested that the movie film be refilmed and reedited. In the fall of 1977, the movie film was shown at a trade screening to exhibitors as a promotion. The movie film won critical acclaim in an international horror film competition overseas, which selected it as one of two nominees from the United States. The movie film was designated as one of the top five horror pictures of the world in 1978. The movie film, however, was held in Dimension's inventory during 1977 and was not released to the public until May 1978. In 1978, Dimension had financial problems. Consequently, later that year, the distribution of the movie film was curtailed. Even though the movie film did not play at very many places in the United States, it generated approximately $ 1 million at the box office. The Partnership, however, did not receive or accrue any income or receipts *558 in 1977 or 1978 from the exploitation of the movie film. After Dimension ceased its distribution of the movie film, Steven Trattner, one of the film's producers, counseled Robert Trattner, one of the Partnership's general partners, against filing suit on the note or attempting to recover the movie film from Dimension. Subsequently, the Partnership neither filed suit on the note nor attempted to recover the movie film from Dimension. The Partnership filed Federal returns of income for its taxable years ended December 31, 1976, 1977, and 1978, respectively. For each of those years, it claimed a basis of $ 1,200,000 in the movie film and claimed depreciation deductions with respect to the movie film in such years of $ 356,700, $ 379,747 and $ 343,553, respectively. The depreciation deduction was calculated under the so-called "income forecast method." At the end of 1978, the Partnership listed the movie film on its Federal return of income showing a book value (net of depreciation) of $ 120,000. Further, the Partnership claimed that the movie film qualified for investment tax credit for 1976. On their 1976 Federal income tax return, petitioners claimed petitioner's distributive *559 share of the Partnership's depreciation expense and his share of the Partnership's investment in the movie film, for which petitioners claimed $ 545 of investment tax credit. On their 1977 and 1978 Federal income tax returns, petitioners claimed losses, due in large part to petitioner's share of the Partnership's depreciation deductions, and claimed investment tax credit carryforwards resulting from petitioner's share of the Partnership's investment in the movie film. For taxable years 1977 and 1978, petitioners claimed losses with respect to the Partnership's investment in the movie film in the amounts of $ 21,389 and $ 40,825, respectively. Also, petitioners, for taxable years 1977 and 1978, carried forward from 1976 their unused investment tax credit from the Partnership's investment in the movie film in the amounts of $ 3,927 and $ 1,502, respectively. OPINION The first issue we will address is whether petitioners may claim depreciation deductions under section 167(a) with respect to the Partnership's investment in the movie film. Petitioners bear the burden of showing their entitlement to a deduction. Interstate Transit Lines v. Commissioner, 319 U.S. 590, 593, 87 L. Ed. 1607, 63 S. Ct. 1279 (1943); *560 New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 78 L. Ed. 1348, 54 S. Ct. 788 (1934); Rule 142(a). Respondent argues that, under the income forecast method, no depreciation deduction is allowable because the Partnership received no income with respect to the film during the years in issue. Gordon v. Commissioner, 766 F.2d 293, 298 (7th Cir. 1985), affg. a Memorandum Opinion of this Court; Fife v. Commissioner, 82 T.C. 1, 9 (1984); Greene v. Commissioner, 81 T.C. 132, 140 (1983); Wildman v. Commissioner, 78 T.C. 943, 951 (1982); Siegel v. Commissioner, 78 T.C. 659, 693 (1982). The parties stipulated that the Partnership neither received nor accrued any income with respect to the movie film during 1977 or 1978. Consequently, we hold that petitioners may not claim a depreciation deduction with respect to the movie film during the years in issue. Instead of attempting to sustain the depreciation deductions originally claimed on their returns, petitioners argue, for the first time on brief, that they should be allowed an abandonment loss deduction for 1978, claiming that the movie film was *561 abandoned or retired from service in such year. Respondent objects to petitioners' raising such argument, as the question of whether an abandonment occurred was not placed in issue by the pleadings, and respondent had no notice of petitioners' intent to rely upon such argument prior to the filing of the post-trial briefs. We consistently have refused to consider an issue raised for the first time on brief where the opposing party would be surprised or prejudiced. Centel Communications Co. v. Commissioner, 92 T.C. 612 (1989), affd. 920 F.2d 1335, 1340 (7th Cir. 1990); 508 Clinton Street Corp. v. Commissioner, 89 T.C. 352, 353 n.2 (1987); Seligman v. Commissioner, 84 T.C. 191, 199 (1985), affd. 796 F.2d 116 (5th Cir. 1986). Because petitioners did not present their position on the abandonment issue to respondent or to the Court until they raised it in their briefs, we will not consider it. The next issue is whether petitioners are entitled to an investment tax credit for petitioner's share of the Partnership's investment in the movie film. A taxpayer is entitled to an investment credit *562 under section 38 with respect to an investment in a motion picture film only if the film is "new section 38 property" (determined without regard to useful life) which is a "qualified film" and only to the extent that the taxpayer has an "ownership interest" in the film. Sec. 48(k)(1)(A). A motion picture film is "new" section 38 property until it is placed in service in any medium of exhibition in any geographical area of the world; no investment tax credit is available to a taxpayer who acquires an ownership interest in the film after such time (except for certain costs subsequently incurred by the taxpayer). Sec. 1.48-8(a)(2), Income Tax Regs.
There is no dispute that the movie film is "new section 38 property," a "qualified film," [4] and property in which petitioners have an "ownership interest." [5] Respondent, however, disputes when the movie film was placed in service. *563 Respondent contends that the movie film was placed in service in 1976, rather than in 1977 or 1978. Respondent argues that any investment tax credit allowable with respect to the movie film should be taken in 1976 and, if any credit remains unused, it first should be carried back 3 years preceding 1976, and then carried forward to the 7 years following 1976. Petitioners, on the other hand, contend that the movie film was placed in service in 1977 or, alternatively, 1978, and, accordingly, that they are entitled to an investment credit on petitioner's share of the Partnership's investment in the film for 1977 or, alternatively, 1978. With respect to the issue of when a qualified film is placed in service, section 1.48-8(a)(5), Income Tax Regs., provides: Placed in service. A qualified film is placed in service when it is first exhibited or otherwise utilized before the primary audience for which the qualified film was created. Thus, a qualified film is placed in service when it is first publicly exhibited for entertainment purposes and a qualified educational film is placed in service when it is first exhibited for instructional purposes. Each episode of a television film *564 or tape series is placed in service when it is first exhibited. A qualified film is not placed in service merely because it is completed and therefore in a condition or state of readiness and availability for exhibition, or merely because it is exhibited to prospective exhibitors, sponsors, or purchasers, or is shown in a "sneak preview" before a select audience.
We agree with petitioners that the movie film was not placed in service until 1978. As we have set forth above in our findings of fact, the movie film, as it originally was filmed, was completed in 1976. The movie film, however, was not exhibited to its primary audience in that year. At the request of the distributor, the movie film was refilmed and reedited in 1977. As a result of the refilming and reediting, the movie film was held in the distributor's inventory during 1977 until May 1978, when the movie film was first released to its primary audience -- the public. That the movie film was shown in 1977 at trade screenings to exhibitors as a promotion does not cause the movie film to have been placed in service during 1977. It is clear that the movie film's primary audience was the public, not such exhibitors, *565 and it was not until 1978 that the film was first exhibited to the public. See Law v. Commissioner, 86 T.C. 1065, 1110 (1986) (film placed in service when released to theatrical markets); Budget Films, Inc. v. Commissioner, 85 T.C. 114, 116, 124 (1985) (film placed in service when publicly exhibited).[6]
Respondent contends that petitioners' claim of an investment tax credit and depreciation on their 1976 return forecloses their right to argue that they are entitled to deductions with respect to petitioner's share of the Partnership's investment in the movie film in either 1977 or 1978. We do not agree. The fact that petitioners have committed an error in prior years is not a sufficient basis to find for respondent. North Carolina Granite Corp. v. Commissioner, 43 T.C. 149, 168 (1964); *566 Kenosha Auto Transport Corp. v. Commissioner, 28 T.C. 421 (1957). Moreover, respondent's argument is akin to estoppel, which must be pleaded as an affirmative defense; not having properly pleaded the defense, respondent is deemed to have waived it. Arkansas Best Corp. v. Commissioner, 83 T.C. 640, 660 n. 8 (1984), affd. in part and revd. in part on other issues 800 F.2d 215 (8th Cir. 1986), affd. 485 U.S. 212 (1988); Rule 39. For the same reasons, respondent's contention that the Partnership's reporting of the movie film on its 1976 return as qualifying for investment tax credit and depreciation are binding admissions by the Partnership that the movie film was placed in service in 1976 must fail. While the treatment of an item on a return is not dispositive of an issue, it is a factor to be considered with all other relevant evidence. Guardian Industries, Inc. v. Commissioner, 97 T.C. 308, (1991) (slip op. at 26-27). In addition to the reporting positions of the 1976 returns of petitioners and the Partnership, respondent points to other indirect evidence of when the movie film was placed in service: The *567 parties' stipulation that the carryforward credits claimed in 1977 and 1978 were the result of petitioner's investment in the Partnership; the acquisition of the movie film by the Partnership in 1976; the reporting of income from the movie film by the Partnership in 1976; and the Partnership's claim of depreciation deductions with respect to the movie film, beginning in 1976. In order to determine when a motion picture is placed in service, section 1.48-8(a)(5), Income Tax Regs., provides for an inquiry into when the motion picture is "first publicly exhibited for entertainment purposes." The evidence to which respondent points, however, is ambiguous and does not answer the pertinent inquiry posed by the regulations. Respondent would have us disregard the testimony of the movie film's producer, Steven Trattner, who explained that the movie film was not shown to general audiences, i.e., the public, until May 1978. Steven Trattner's testimony is supported by a stipulated affidavit of Sheldon Tromberg, another producer of the movie film, who stated that the movie film was released in 1978. We believe Steven Trattner's testimony. Accordingly, we conclude that the movie film was placed *568 in service in 1978 for investment tax credit purposes, and hold that petitioners are entitled to an investment credit in 1978 with respect to petitioner's share of the Partnership's investment in the movie film. Lastly, we must decide whether petitioners are liable for increased interest under section 6621(c). Respondent amended his answer to assert increased interest under section 6621(c), for taxable years 1977 and 1978. The burden of proof with respect to such issue therefore is on respondent. Rule 142(a). In his amendment to his answer, respondent states that the Partnership used a purchase price of $ 1,200,000 to determine its depreciation and investment credit for the years in issue. In his amendment, respondent also alleges that petitioners overstated the value of the movie film by at least 150 percent of the correct valuation amount. In the stipulation of facts, however, respondent agreed with petitioners that the film had a value of $ 1,200,000, which is the very amount that respondent claims is at least 150 percent too great. Respondent's briefs are devoid of argument with respect to his claim for increased interest. In light of the foregoing, we hold that petitioners *569 are not liable for increased interest under section 6621(c). To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. References to petitioner in the singular denote petitioner Martin Sterenbuch.↩
3. The $ 180,000 cash was to be paid to the Partnership as follows: ↩
$ 3,500 for 6 months beginning 1/1/77
$ 21,000
$ 16,500 for 6 months beginning 7/1/77
99,000
$ 5,000 for 12 months beginning 1/1/78
60,000
$ 180,000
4. A qualified film is defined as "any motion picture film or video tape created primarily for use as public entertainment or for educational purposes. Such term does not include any film or tape the market for which is primarily topical or is otherwise essentially transitory in nature." Sec. 48(k)(1)(B)↩. 5. Sec. 48(k)(1)(C) provides that a taxpayer's ownership interest in a qualified film "shall be determined on the basis of his proportionate share of any loss which may be incurred with respect to the production costs of such film." The existence and extent of an ownership interest is determined at the time the film is placed in service. Sec. 1.48-8(a)(4)(ii), Income Tax Regs.; S. Rept. 94-938 (1976), 1976-3 C.B. (Vol. 3) 49, 230. A taxpayer may have an ownership interest in a motion picture film for purposes of the investment tax credit even if the taxpayer has neither legal title to nor a depreciable interest in the motion picture. Durkin v. Commissioner, 87 T.C. 1329, 1383 (1986), affd. 872 F.2d 1271↩ (7th Cir. 1989).
6. Upham v. Commissioner, T.C. Memo 1989-253, affd. 923 F.2d 1328↩ (8th Cir. 1991) (film placed in service when released nationally).